## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| TIMOTHY GAMBERDELLA | |
| Plaintiff, | |
| v. | No. 20-cv-4606<br>Judge Franklin U. Valderrama |
| LOUIS DEJOY, Postmaster General, United States Postal Service, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Timothy Gamberdella (Gamberdella) worked for the Defendant United States Postal Service (Postal Service) until his retirement which took effect on May 31, 2017. Gamberdella tried to rescind his retirement, which the Postal Service denied. Gamberdella then filed this suit against the Postal Service for age and disability discrimination[1] under the Rehabilitation Act of 1973, 29 U.S.C. §794, *et seq* and for hostile work environment, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (Title VII). R.[2] 1, Compl. The Postal Service moves for summary judgment (Motion) under Federal Rule of Civil Procedure 56(a). R. 49, Mot. Summ. J. For the reasons that follow, the motion for summary judgment is granted.

---

[1]The Court construes Gamberdella's claim as one under the Rehabilitation Act as the Americans with Disabilities Act (ADA), 42 U.S.C. §12101, *et seq,* does not apply to federal workers. *Vargas v. Dejoy,* 980 F.3d 1184, 1190, fn. 4 (7th Cir. 2020).

[2]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

## Background

### I.    Local Rule 56.1 Statements and Responses

Before considering the merits of the Motion, the Court first addresses Gamberdella's alleged failure to comply with Local Rule 56.1; and then turns to the Postal Service's objections to Gamberdella's statement of additional facts, Pl's SOAF[3].

Local Rule 56.1 governs summary judgment briefing in the Northern District of Illinois. When "a party moves for summary judgment in the Northern District of Illinois, it must submit a memorandum of law, a short statement of undisputed material facts [(L.R. 56.1 Statement)], and copies of documents (and other materials) that demonstrate the existence of those facts." *ABC Acq. Co., LLC v. AIP Products Corp.*, 2020 WL 4607247, at *7 (N.D. Ill. Aug. 11, 2020) (citing N.D. Ill. Local R. 56.1) (cleaned up)[4]. The L.R. 56.1 Statement must "cite to specific pages or paragraphs of the documents and materials in the record." *Id.* (citing *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 818 (7th Cir. 2004)). Under Local Rule 56.1(b) and (e), the nonmovant must counter with a response to the separate statement of facts, N.D. Ill. Local R. 56.1(b )(3), and either admit each fact, or "dispute an asserted fact, . . . [by] cit[ing] specific evidentiary material that controverts the fact and must concisely

---

[3]Citations to the parties' Local Rule 56.1 Statements of Fact are identified as follows: "DSOF" for Defendant's Statement of Facts [R. 51]; "Pl.'s Resp. DSOF" for Plaintiff's Response to Defendant's Statement of Facts [R. 55]; "PSOF" for Plaintiff's Statement of Additional Facts [R. 55 (pp. 20–21)]; and "Def.'s Resp. PSOF" for Defendant's Response to Plaintiff's Statement of Additional Facts [R. 57].

[4]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

explain how the cited material controverts the asserted fact." N.D. Ill. Local R. 56.1(e)(3). "Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." N.D. Ill. Local R. 56.1(e)(3); *see Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion."). If the nonmovant asserts additional facts not included in the moving party's statement of facts, the nonmovant is to file a statement of additional material facts that attaches any cited evidentiary material not attached to the moving party's statement of facts or the non-moving party's response thereto. N.D. Ill. Local R. 56.1(b)(3). The Seventh Circuit has repeated that "a district court may strictly, but reasonably, enforce local rules." *Igasaki v. Illinois Department of Financial and Professional Regulation*, 988 F.3d 948, 957 (7th Cir. 2021).

The Postal Service, on reply, contends that Gamberdella, in violation of Local Rule 56.1, attempts to dispute a number of the Postal Service's statements of fact in whole or in part without citing to the record, specifically, Pl's Resp. DSOF ¶¶ 9, 11–14,17, 19–22, 25, 27, 30–31, 33–39, 41–43, 45, 52–54, 56, and 72. R. 56, Reply at 3. Also, asserts the Postal Service, Gamberdella impermissibly attempts to add additional facts in response to the Postal Service's statement of facts, citing Pl's Resp. DSOF ¶¶ 4–5, 7, 18, 29, 32, 40, 44, 47–48, 51, 57, 59, 61–61, 65, 71 and 74. *Id.* at 2. Last, the Postal Service argues that Gamberdella's statement of additional facts are also deficient as the cited evidentiary materials either do not support Gamberdella's

assertions or have not been submitted as exhibits, citing paragraphs 1 through 5. PSOF ¶¶ 1–5. *Id*. Therefore, the Postal Service asks that the Court deem all of the Postal Service's statement of material facts admitted and disregard Gamberdella's additional statement of facts. *Id*.

Upon review of the cited-to material, the Court agrees with the Postal Service that Gamberdella has failed to comply with the Local Rule 56.1 requirements. Accordingly, "facts that a party raises in a Local Rule 56.1 response that do not controvert the assertion and that are not included in the party's statement of additional facts are stricken." *Little v. Illinois Dep't of Pub. Health*, No. 17 CV 4466, 2020 WL 1530736, at *1 (N.D. Ill. Mar. 31, 2020). That, in effect, means that the Court will disregard Gamberdella's response to the Postal Service's Statement of Facts and Gamberdella's additional statement of facts. The Court deems all of the Postal Office's Statement of Facts as admitted.

The Court now turns to the material facts in the case, subject to the foregoing rulings.

## II.    Material Facts

The following facts are set forth favorably to Gamberdella, the nonmovant, as the record and Local Rule 56.1 permit. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012); *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 937 (7th Cir. 2003). While the Court draws all reasonable inferences from the facts in Gamberdella's favor, the Court does not "necessarily vouch[] for their accuracy." *Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 281 (7th Cir. 2015) (cleaned up); *see also Knopick v. Jayco, Inc.*,

895 F.3d 525, 527 (7th Cir. 2018) (cleaned up) ("Given this summary judgment lens, we do not vouch for the objective truth of all of these facts."). As noted above, this background section details only material facts submitted by the Postal Service. DSOF.

In 1985, Gamberdella began working for the Postal Service in Arlington Heights, Illinois, first as a mail carrier and then as a special delivery messenger, and eventually as a maintenance custodian. DSOF ¶¶ 1–4. In March 2011, Gamberdella went on leave and started to receive workers' compensation until his retirement in May 2017. *Id*. ¶¶ 6–7.

In December 2016, Gamberdella called the Human Resources Shared Services Center (HRSSC), the Postal Service's national processing center for benefits, compensation, retirement, and other personnel matters, and requested information about retirement. DSOF ¶¶ 8–9. Thereafter, the HRSSC mailed a retirement packet to Gamberdella, containing all of the necessary and optional forms for applying for retirement as well as information explaining the various processes and benefits relevant to Gamberdella's retirement application. *Id*. ¶¶ 10–11. Also included in the packet was information about how to make changes to, or cancel, a previously submitted retirement application. *Id*. ¶12. Specifically, the packet explained that any cancellations or changes to any retirement application must be submitted in writing (via mail or fax) and received by the HRSSC prior to the close of business on the effective date of the retirement. *Id*. ¶ 13. The packet stated that cancellations or changes needed to include the employee's name, his employee identification number,

his signature, the date, and a short statement of the request. *Id*. The same information was communicated to Gamberdella over the telephone. *Id*. ¶ 14.

In February 2017, Gamberdella had a call with an HRSSC retirement counselor regarding retirement. DSOF ¶ 15. A few months later, in April 2017, HRSSC received Gamberdella's completed and signed retirement paperwork, with an effective retirement date of April 30, 2017. *Id*. ¶ 16. The HRSSC then sent a notice of separation to the Postal Service's Lakeland District, which included the Arlington Heights post office, stating that Gamberdella would retire as of April 30. *Id*. ¶ 17. However, a few weeks before he was scheduled to retire, Gamberdella called HRSSC inquiring about how he could cancel his retirement. *Id*. ¶ 18. The HRSSC agent informed Gamberdella that the HRSSC would need to receive a written cancellation prior to the close of business on the effective retirement date (i.e., 8:30 p.m. ET on April 30, 2017). *Id*. ¶ 19. The agent also explained that without such written communication before the deadline, the Postal Service would deem Gamberdella retired. *Id*. A few days later, Gamberdella called HRSSC again, this time asking if he could change the effective date of his retirement. *Id*. ¶ 21. Again Gamberdella was informed that any changes had to be submitted in writing prior to the close of business on the effective retirement date. *Id*. ¶ 22.

Gamberdella, four days before he was scheduled to retire, on April 26, sent a letter, via fax, to HRSSC requesting his retirement be cancelled. DSOF ¶ 23. The HRSSC soon thereafter sent a revised notice of separation to the Lakeland District, cancelling Gamberdella's April 30, 2017 retirement. *Id*. ¶ 25. Gamberdella followed

up by calling the HRSSC a few days later, which confirmed receipt of his letter and that the Lakeland District had been notified of his cancelled retirement. *Id.* ¶¶ 26–27.

In mid-May 2017, Gamberdella called the HRSSC to inquire about resubmitting his retirement paperwork. DSOF ¶ 28. During the call, HRSSC told Gamberdella to mail in his paperwork immediately to ensure that the HRSSC had sufficient time to process it by May 31, Gamberdella's preferred date of separation. *Id.* ¶ 29. On May 22, the HRSSC received Gamberdella's completed and signed retirement application with an effective date of May 31, 2017. *Id.* ¶ 30. About a week before he was scheduled to retire, Gamberdella called the HRSSC, asking to change his retirement effective date from May 31 to May 26. *Id.* ¶ 31. Gamberdella was informed that any changes needed to be submitted before close of business on the effective date (i.e. 8:30 p.m. ET on May 31, 2017), as he had done before. *Id.* ¶ 32. Upon receipt of Gamberdella's retirement paperwork, the HRSSC again sent a notice of separation letter to the Lakeland District, notifying it that Gamberdella would retire as of May 31, 2017. *Id.* ¶ 33.

On May 31, 2017, Gamberdella called the HRSSC inquiring about either cancelling his retirement or changing the effective date. DSOF ¶ 34. The HRSSC agent told Gamberdella he had until the close of business that day to make any changes. DSOF ¶ 35. By 8:30 p.m. on May 31, 2017, the HRSSC had not received any written request from Gamberdella to cancel his retirement or change the effective date, and as such, Gamberdella's retirement began on June 1, 2017. *Id.* ¶ 36.

7

On June 5, 2017, Gamberdella called the HRSSC and asked to rescind his retirement. DSOF ¶ 37. The agent informed Gamberdella that he had until the close of business on the effective retirement date, namely May 31, to make any changes or cancel his retirement and that it was too late to do so now. *Id.* ¶ 38. Gamberdella informed the agent that he did not want to retire and asked about appealing the decision. *Id.* ¶ 39. The HRSSC agent, however, informed him that he could not appeal because it was past the effective date. *Id.* Undeterred, that same day Gamberdella faxed a letter to the HRSSC asking to rescind his retirement. *Id.* ¶ 40.

In response to Gamberdella's letter, HRSSC erroneously sent a revised notice of separation to the Lakeland District the same day, indicating that Gamberdella's retirement had been canceled. DSOF ¶ 41. The next day the HRSSC sent a corrected notice of separation to the Lakeland District, clarifying that Gamberdella had retired as of May 31. *Id.* ¶ 42. The HRSSC additionally sent a note along with this notice of separation, advising Lakeland District that the prior notice should be disregarded. *Id.* ¶ 43.

On June 6, 2017, Gamberdella faxed a letter to the HRSCC asking to withdraw his prior request and to "remain retired." DSOF ¶ 44. Several days later, however, on June 9, Gamberdella faxed yet another letter to the HRSSC, this time asking to cancel his retirement. *Id.* ¶ 47. Two days later, Gamberdella faxed a letter to the HRSSC, withdrawing his request to cancel his retirement and asking to "remain retired." *Id.* ¶ 48. The next day, on June 12, Gamberdella faxed another letter to the HRSSC, asking the HRSSC to disregard his letter of June 11 and cancel his retirement. *Id.*¶

49. Between June and September 2017, Gamberdella spoke to a number of individuals at the HRSSC, all of whom informed him that he had failed to submit a timely written request to cancel his retirement and that he had therefore retired as of May 31. *Id*. ¶¶ 46, 50–53.

In October 2017, the HRSSC mailed Gamberdella three letters in response to his requests for documents regarding his retirement. DSOF ¶ 54. All of the letters reiterated that Gamberdella had retired as of May 31, 2017, and that a written cancellation request had not been received until after that date. *Id*. Gamberdella at this point had begun receiving his retirement payments, which included payments for June, July, August, and September. *Id*. ¶ 55. Gamberdella noticed that his retirement payments were about $800 to $1,000 less per month than what he had been receiving from worker's compensation while still employed. *Id*. ¶ 56.

In the months and years that followed, Gamberdella continued to contact HRSSC by phone asking how he could be rehired by the Postal Service. DSOF ¶ 57. Much to his chagrin, he was informed on multiple occasions that it was too late to cancel his retirement. *Id*. Gamberdella contacted Senator Tammy Duckworth in 2018 regarding his May 2017 retirement, to which the Postal Service responded with the same explanation given to Gamberdella. *Id*. 58–59. On January 31, 2020, the Postal Service's National Human Resources office sent Gamberdella a letter explaining that all issues concerning his May 31, 2017 retirement had been thoroughly addressed and that the Postal Service would no longer continue to respond to subsequent inquiries on the matter. *Id*. ¶¶ 61–62.

On February 5, 2020, Gamberdella contacted an equal employment opportunity (EEO) counselor. DSOF ¶ 63. A few months later, he filed an EEO complaint alleging that the Postal Service discriminated against him based on his disability and age when it did not allow him to cancel his retirement, either before or after the effective date. *Id*. ¶ 64. The Postal Service dismissed his complaint as untimely in May 2020, explaining that Gamberdella had contacted an EEO counselor nearly three years after retiring and that all of his allegations regarding subsequent interactions with the Postal Service stemmed from conduct that occurred in 2017. DSOF ¶ 65.

Gamberdella then filed this suit against the Postal Service for discrimination on the basis of disability and age and for hostile work environment. *See generally* Compl. Gamberdella primarily alleges that Postal Service "forced him into retirement because of his worker's compensation status." Compl. ¶ 14 (cleaned up). Before the Court is the Postal Service's fully briefed motion for summary judgment.

## Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial."

10

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 256. "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Parker v. Brooks Life Sci., Inc.*, 39 F.4th 931, 936 (7th Cir. 2022) (cleaned up). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

## Analysis

### I. Statute of Limitations[5]

Before a federal employee like Gamberdella can bring a civil action for discrimination against an employer, the employee first must contact an EEO counselor 'within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.'" *Lapka v. Chertoff*, 517 F.3d 974, 981 (7th Cir. 2008) (quoting 29 C.F.R. § 1614.105(a)(1)). The 45-day deadline thus functions as a statute of limitations. *Rennie v. Garrett*, 896 F.2d

---

[5]On July 9, 2021, the Court denied the Postal Service's Motion to Dismiss, R. 28, Mot. Dismiss, under Federal Rule of Civil Procedure 12(b)(6) based on a statute of limitations defense. The Court noted that "discovery may reveal that USPS should indeed prevail," but that the Court could not make such a finding at the early stage. Mot. Dismiss at 5.

1057, 1062–63 (7th Cir. 1990). To determine the date of the alleged employment discrimination, the Seventh Circuit has imposed a two-prong test. First, "there must be a final, ultimate, non-tentative decision to terminate the employee" and second, "the employer must give the employee 'unequivocal' notice of its final termination decision." *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 637 (7th Cir. 2004). "Both of these elements are necessary to start the limitations period; neither alone is sufficient." *Id.*

Here, each party submits a different date of the alleged employment discrimination. The Postal Service, for instance, argues that Gamberdella's termination began on May 31, 2017, the effective date of Gambardella's retirement. Gamberdella's claims are time-barred, argues the Postal Service, because Gamberdella did not seek counseling within 45 days of the effective date of his retirement; within 45 days of the HRSSC processing his retirement; or within 45 days of various communications from the Postal Service which confirmed that Gamberdella had failed to cancel his retirement and therefore retired as of May 31, 2017. R. 50, Memo at 9–10.

Gamberdella disagrees, submitting January 31, 2020 as his date of termination. Resp. at 3. Gamberdella's counterargument hinges on two separate occasions: once in June 2017 and once in August or September 2017, when the Postal Service informed him over the phone that he was still an active employee after his retirement. *Id.* at 2. Not only that, asserts Gamberdella, but it was not until the Postal Service's letter of January 31, 2020, that the Postal Service explained that

issues related to his retirement had been thoroughly addressed and that the Postal Service considered the subject closed. *Id*.

The Court agrees with the Postal Service that the final decision of termination was May 31, 2017. Gamberdella's entire argument is premised on the fact that he continued to communicate with the HRSSC after his effective retirement date, most of which were to challenge and rescind his retirement or to request he be rehired. *See* DSOF ¶¶ 37–62. The Seventh Circuit, however, has clearly stated that "an employer who communicates a willingness to later change a *final* decision of termination, as through an appeals process, does not render a decision 'tentative' and not final for the purposes of beginning the limitations period." *Flannery*, 354 F.3d at 637. Therefore, the HRSSC's willingness to discuss its final decision of retirement and investigate Gamberdella's requests does not make the decision any less final.

Although a closer call, the Court, in considering the myriad of evidence presented in the record, also agrees with the Postal Service that Gamberdella was given unequivocal notice of his retirement. First and foremost, the record is replete with evidence of the Postal Service communicating to Gamberdella that his retirement would be final unless he submitted a written notice of his intent to cancel his retirement or change the effective date. *See* DSOF ¶¶ 12–14. Even more so, the Court cannot overlook the fact that just a month before Gamberdella had complied with the Postal Service's procedures and cancelled his retirement. *Id*. ¶¶ 15–27. From all accounts, undisputed by Gamberdella, he was informed numerous times by HRSSC after his retirement date that he had been deemed retired. *Id*. ¶¶ 37–62.

13

Gamberdella even stated that he wished to "remain retired." *Id*. ¶ 44. The evidence adduced does not stop there. Gamberdella was aware that he was no longer receiving the same monthly payments from his workers' compensation payments and instead was subject to his retirement benefit payments. *Id*. ¶¶ 55–56. And Gamberdella has not supplied a response as to why or how someone who does not believe that he or she has been unequivocally terminated requests in the same breath to be rehired. This suggests to the Court that Gamberdella had indeed understood before January 31, 2020 that his retirement was unequivocally effective.

The Court does consider the fact that on two occasions Gamberdella was informed that he was an "active employee." Memo. at 10; Resp. at 2. Had the story stopped there a factfinder could reasonably have found that Gamberdella did not have notice of his final termination decision. But when compared to the evidence of the contrary, the two occasions pale in comparison. Similarly, Gamberdella's argument that the January 2020 letter from the Postal Service's National Human Resources was the final termination also falls short. Resp. at 5. From the Court's view, the letter simply explained that the issue had been thoroughly addressed and resolved by the Postal Service, and that the Postal Service would no longer respond to further inquiries. DSOF ¶¶ 61–62. Nothing from the material facts presented refer to the finality of the decision, solely Gamberdella's interest in overturning it. Whether considered a letter denying his appeal or establishing that the Postal Service would no longer discuss the matter, the January 2020 letter speaks to the process of challenging the final termination decision—not the finality of the decision itself. No

reasonable factfinder could find that the January 31, 2020 letter was the final decision on termination.

Because the statutory period allows for 45 days from the effective date of the action, which the Court has determined to be May 31, 2017, Gamberdella had until July 15, 2017 to contact an EEO counselor. Because Gamberdella did not contact a EEO counselor until February 5, 2020, almost three years later, Gamberdella's claims for disability and age discrimination are time barred. For those reasons, the Court finds that the Postal Service is entitled to summary judgment.

## II. Disability and Age Discrimination Claims

Even if Gamberdella's discrimination claims were not time barred, they would still fail on the merits. "At the summary judgment stage, courts must determine whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the adverse employment action." *Patel v. Brennan*, 2021 WL 5937769, at *10 (N.D. Ill. Dec. 16, 2021) (cleaned up).

A plaintiff may support his claims of disability and age discrimination by the use of direct or indirect methods of proof. *Zayas v. Rockford Mem'l Hosp.*, 740 F.3d 1154, 1157 (7th Cir. 2014). Whereas the "direct method requires courts to inquire whether a rational juror could infer discriminatory intent from the direct and the circumstantial evidence in the record," the indirect method requires a plaintiff to establish a *prima facie* case by establishing that (1) he is a member of a protected group; (2) he satisfied his employer's legitimate job expectations; (3) he suffered an

adverse employment action; and (4) similarly situated employees outside of his protected class were treated more favorably. *Id*. In recent years, however, the Seventh Circuit has moved away from—while not abandoning completely—these two methods, instead instructing that, "[e]vidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the 'direct' evidence does so, or the 'indirect' evidence. Evidence is evidence." *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). The ultimate question, then, is whether there is evidence that "would permit a reasonable factfinder to conclude that the plaintiff's [age or disability] caused the discharge or other adverse employment action." *Id.*; *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 368 (7th Cir. 2019) (assessing the evidence in an ADEA claim "as a whole, rather than asking whether any particular piece of evidence proves the case by itself.") (quoting *Ortiz*, 834 F. 3d at 765)).

"One way of proving employment discrimination under Title VII, the ADEA, or the Rehabilitation Act is the burden-shifting framework under *McDonnell Douglas v. Green*, 411 U.S. 792 (1973)[6]". *Patel*, 2021 WL 5937769, at *11. Under the *McDonnell Douglas* framework, the plaintiff must establish a prima facie case of discrimination based on disability or age. *See Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 771–72 (7th Cir. 2002). If the plaintiff meets that burden, then the defendant must "set forth a legitimate nondiscriminatory reason for the adverse employment action which if

---

[6]Both parties utilize the indirect method of the *McDonnell Douglas* framework within their briefs. For this reason, the Court analyzes Gamberdella's claims using the familiar burden-shifting *McDonnell Douglas* framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Rooney v. Koch Air*, LLC, 410 F.3d 376, 380 (7th Cir. 2005).

believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment actions." *Nichols v. Southern Illinois University-Edwardsville*, 510 F. 3d 772, 783 (7th Cir. 2007). "If the employer satisfies its burden, the burden shifts back to the plaintiff to prove that the proffered reason was pretextual." *Walker v. Glickman*, 241 F.3d 884, 889 (7th Cir. 2001). Pretext is defined as "a dishonest explanation, a lie, rather than an oddity or an error." *Sweatt v. Union Pacific R. Co.*, 796 F.3d 701, 709 (7th Cir. 2015). To establish pretext, the plaintiff must show either that the employer was motivated by a discriminatory reason or that the proffered reason is "unworthy of credence." *Zaccagnini v. Charles Levy Circulating Co.*, 338 F.3d 672, 675–676 (7th Cir. 2003).

The Court addresses both disability and age discrimination under the *McDonnell Douglas* framework. Under the Rehabilitation Act, a plaintiff must establish a *prima facie* case by proving (1) he is disabled under the ADA, (2) he met his employer's legitimate expectations, (3) he suffered an adverse employment action; and (4) similarly situated, substantially younger employees were treated more favorably. *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 601 (7th Cir. 2009). Likewise, under the ADEA, plaintiff establishes a *prima facie* case by proving (1) he was over forty years of age; (2) he was meeting his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated, substantially younger employees were treated more favorably. *See Simpson v. Franciscan Alliance, Inc.*, 827 F.3d 656, 661 (7th Cir. 2016).

17

The Postal Service does not contest that Gamberdella can establish the first three elements of either claim, and thus, the Court need only address the last element—whether Gamberdella has identified any comparators.

Gamberdella identifies two applicants as similarly situated employees without a disability or younger who were treated more favorably (comparators). Resp. ¶¶ 9–10, 12. The first comparator was a veteran, under 40 years old, who scored a 94 on her Postal exam, had no prior U.S. Postal Service (USPS) experience, and was hired. *Id.* ¶¶ 9–10. The second comparator was also a veteran, under 40 years old, scored a 10 on his Postal exam, had no prior USPS experience, and was a top five candidate for a position presumably similar to or the same as Gamberdella's. *Id.* ¶ 10. There was no indication, according to Gamberdella, that either candidate was disabled. *Id.*

On the other end, the Postal Service argues that Gamberdella's age and disability discrimination claims fail because he has not adduced evidence that the Postal Service treated similarly situated employees who were not members of his protected class more favorably or that the reason for action was pretextual. Memo. at 13. Furthermore, contends the Postal Service, Gamberdella violated Rule 37(c) by attempting to identify similarly situated individuals after discovery. Reply at 5; Fed. R. Civ. P. 37(c). And even disregarding his violation of Rule 37(c), the comparators cited by Gamberdella for the first time in response are not similarly situated as they are veterans (which afford them additional points on their Postal exams) and because they are not retirees trying to revoke their retirement. *Id.* at 6.

18

"The purpose of the 'similarly situated' comparator element is to ensure that all other variables are discounted so that an inference of unlawful intent would be reasonable." *Cole v. Illinois Tool Works, Inc.*, 924 F. Supp. 2d 978, 987 (N.D. Ill. 2013). "In order for an individual to be similarly situated to the plaintiff, the plaintiff must show that the individual is directly comparable to her [or him] in all material respects." *Monroe v. Indiana Dep't of Transportation*, 871 F.3d 495, 507 (7th Cir. 2017) (cleaned up). "The similarly-situated analysis calls for a flexible, common-sense examination of all relevant factors." *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012). Therefore, comparators generally need to have "dealt with the same supervisor, were subject to the same standards and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Monroe*, 871 F.3d at 507.

The Postal Service has the better of the arguments here. Besides the fact that reference to the potential comparators for the first time in a brief violates the Federal Rules of Civil Procedure and the failure to include such evidence in Gamberdella's statement of additional facts violates the Local Rules, these potential comparators are fundamentally different from Gamberdella. First, as noted by the Postal Service, they are both veterans, who are afforded additional considerations, and do have service-related disabilities. Reply at 6. Second, the potential comparators are candidates—not Postal Service retirees trying to withdraw their retirement. These comparators carry more water for failure-to-hire claims, but not disability and age-based discrimination claims as are at issue here. *See Id.*

19

The result would be the same if the Court were to apply the direct method to Gamberdella's claims of discrimination. Ultimately, the only evidence of discrimination provided by Gamberdella are the facts that the Postal Service would not allow Gamberdella to rescind his retirement despite his pleas, and the statute does not explicitly require that Gamberdella's retirement have been withdrawn in writing thereby making a verbal request to terminate his retirement before the effective date valid. Resp. 5–7. Gamberdella's arguments are well taken, but for a different claim. None of the evidence points to an act of discrimination against Gamberdella because of his disability or age. Under this method, the Court also does not find that with the evidence produced, whether individually or cumulatively, a factfinder could find an act of discrimination occurred.

Even if Gamberdella could establish a *prima facie* case, the Postal Service will still have met its pretextual burden by proving that there was a legitimate, nondiscriminatory reason for the adverse action. Mainly, the Postal Service has provided sufficient evidence that Gamberdella's retirement was effective on May 31, 2017 because he failed to cancel or change it before the effective date. *See* DSOF ¶¶ 28–62. Moreover, the Postal Service implemented the same procedure that Gamberdella complied with a month earlier. Memo. at 13–14. With no indication that the Postal Service was dishonest or veered from its policies and practices, the Court could not find a deliberate falsehood to hide any discriminatory acts, as required under the *McDonnell Douglas* framework.

20

All in all, considering all of the evidence in the record, the Court finds Gamberdella has not adduced evidence to support his age or disability discrimination claim. And as a result, the Postal Service is therefore entitled to summary judgment on these claims.

### III.   Hostile Work Environment

Lastly, the Court addresses Gamberdella's hostile work environment claims. "For a plaintiff to prevail on a hostile work environment claim, she must show that: (1) she was subject to unwelcome harassment; (2) the harassment was based on her [age]; (3) the harassment was sufficiently severe or pervasive so as to alter the conditions of her employment and create a hostile or abusive atmosphere; and (4) there is a basis for employer liability." *Tyburski v. City of Chicago*, 964 F.3d 590, 601 (7th Cir. 2020). Courts "consider all of the circumstances, including frequency and severity of the conduct, whether it is humiliating or physically threatening, and whether it unreasonably interferes with an employee's work performance." *Id.* at 601–02.

The Postal Service asserts that Gamberdella does not provide any evidence to support his hostile work environment claims because at most, Gamberdella testified that his claim was based on the "Postal Service not allowing him to get 'back into work' or 'cancel out' his retirement." Memo at 14. The Postal Service also argues that any actions that happened after termination, which this Court has determined to be May 31, 2017, are not actionable under a hostile-work-environment theory. *Id.* Finally, the Postal Service brings to the Court's attention that a hostile work

environment seems even more unlikely considering that Gamberdella had been on leave for 6 years until his retirement. *Id*. at 15. Gamberdella does not address the Postal Service's arguments, and for that reason, waives any such arguments. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument. . . results in waiver."). Gamberdella's hostile work environment claim fails on the merits and the Court, adopting the Postal Service's points, cannot see any reason to consider otherwise. For those reasons, the claim is dismissed on its merits.

**Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment [49] is granted. Civil case terminated.


Franklin U. Valderrama
United States District Judge


Dated: March 29, 2024